[Civ. No. 13110.  First Dist., Div. Two.  Mar. 5, 1947.]

JOHN RIOLFO, Appellant, v. MARKET STREET RAIL-
WAY COMPANY (a Corporation) et al., Respondents.

Tobriner & Lazarus and Walter J. DeMartini for Appellant.

Cyril Appel and Jesse H. Miller for Respondents.

DOOLING, J.—This is an appeal by plaintiff from a judgment entered on a verdict of a jury for defendants. Plaintiff sued for damages resulting from personal injuries received in a fall from the top of a garbage truck after being struck by the rope attached to the back of defendants' trolley bus.

The defendant, Market Street Railway Company, operates an electric bus which draws current from two overhead electric wires by two trolley poles. There is a rope attached to the end of each trolley pole which extends down and is attached to the back of the bus in a box containing a reel and a spring so that the rope is kept taut. The bus runs on rubber tired wheels and is so constructed that it can move approximately 14 feet to the right or left of the center line between the two overhead wires. While the bus is in such a position the trolley pole extends diagonally from the top of the bus to the two wires. The ropes attached to the end of

the poles are also pulled into a diagonal position and extend down past the side of the bus to the box.

Plaintiff and several other men were collecting garbage in a truck owned by the Sunset Scavenger Association. Plaintiff was assigned to stay on the truck and sort the garbage as it was collected. As the garbage crew neared the end of their rounds for the day, the driver double parked the truck on 18th Street approximately half way between Castro and Collingwood Streets in San Francisco. This placed the truck under the two overhead electric wires. Cardboard had been inserted in the sides and rear of the truck so as to enlarge its capacity. Mr. Ratto, the foreman, testified that the top of the load was about 12 feet above street level. The electric wires were 16 feet above the street. Plaintiff, who had nothing to do with the driving or parking of the truck, was on top sorting the garbage and spreading it so as to balance the load. As Mr. Ratto left the truck he warned plaintiff to watch out for the electric buses.

Several persons were standing on the corner waiting for the bus and they were eyewitnesses to the accident. They testified that plaintiff would stoop down and be lost from their view. When the accident occurred, plaintiff was rising from a stooping position and the rope from the trolley pole hit him, he lost his balance, grabbed the rope and was pulled into the street. The bus driver testified that he saw no one as he approached the truck from the rear. He honked his horn and turned around the truck and the first knowledge he had that anything was wrong was when he felt the trolley go off the wire. These witnesses also estimated the speed of the bus as between two and five miles per hour. Plaintiff testified that he was standing up in full view at the time of the accident. Plaintiff's witnesses also estimated the speed of the bus as much higher, one witness testifying that the bus was going 50 miles per hour. As the bus approaches it makes the trolley wires "sing" or "hum" and the noise is discernible for about half a block. Plaintiff testified that he heard the bus approaching but paid no attention to it, and did not remember whether he heard a horn honked or not.

The jury returned a verdict in favor of defendants and plaintiff has appealed. The appeal is based on the asserted misconduct of counsel for defendants and error in the giving and refusing of instructions.

At the close of appellant's case his counsel stated that he and counsel for respondents had entered into a stipulation as to the amount of medical expenses incurred, but that these expenses had not been paid by appellant but by his employer. Counsel for respondents then stated that the stipulation was correct as the expenses had been paid under the provisions of the Workmen's Compensation Act. Counsel for appellant stated, ''You know there is no compensation involved in this case.'' Counsel for respondents replied that he was stipulating that the bills had been paid by appellant's employer under the provisions of the Workmen's Compensation Act. No objection nor motion to strike was made and the remarks were not assigned as misconduct. This was the only reference to compensation or the compensation act that was made. Now, on appeal, it is contended that these remarks constituted prejudicial misconduct. ▋ It is settled that, unless objection is made below, such questions cannot be raised on appeal. (*Mullanix* v. *Basich,* 67 Cal.App.2d 675, 687 [155 P.2d 130]; *Burke* v. *John E. Marshall, Inc.,* 42 Cal. App.2d 195, 208 [108 P.2d 738]; *Packard* v. *Moore,* 9 Cal.2d 571, 580 [71 P.2d 922]; 11 So.Cal.L.Rev. 407, 413-414; 2 Cal. Jur. 266.)

However, appellant argues, these remarks were so prejudicial to his case that the necessity for objection was not necessary. In a case much stronger on its facts, as compensation was not only referred to but was argued to the jury, a similar contention was made and the court stated: '' 'The cases on which appellant relies to support his position are clearly distinguishable in that they involve appeals from orders granting new trials where one of the grounds for the granting of the motion for a new trial was prejudicial misconduct of the attorney. (*Baroni* v. *Rosenberg,* 209 Cal. 4 [284 P. 1111]; *Amore* v. *Di Resta,* 125 Cal.App. 410 [13 P.2d 986]; *Ferrario* v. *Conyes,* 19 Cal.App.2d 58 [64 P.2d 975]; *Mangino* v. *Bonslett,* 109 Cal.App. 205 [292 P. 1006].) *Walling* v. *Kimball,* 17 Cal.2d 364 [110 P.2d 58], notes this difference in approach to the problem of what constitutes prejudicial misconduct on appeal. But, when the case comes to us after the trial judge has denied a new trial urged upon these grounds and has thus found that the claimed misconduct was not prejudicial, the judgment must be affirmed unless there is no reasonable basis for such find-

ing. We may not assume that the jury denied appellant any recovery because it believed he might get some compensation from another source. It is more reasonable to assume that the verdict followed the evidence on the issues of negligence and contributory negligence.' '' (*Huber* v. *Henry J. Kaiser Co.,* 71 Cal.App.2d 278, 285 [162 P.2d 693].) (See, also, *Brown* v. *McCuan,* 56 Cal.App.2d 35, 41 [132 P.2d 838].)

The court instructed the jury: "It was the duty of the plaintiff, John Riolfo, to use his faculties of sight and hearing to ascertain the presence of and the approach of the trolley bus . . . and if he failed to do so and as a proximate result he was injured the jury "may find" that such conduct was such contributory negligence as would bar his recovery of damages.

Appellant contends that the instruction should have read that "it was the duty of the plaintiff to use his faculties of sight and hearing *in the exercise of ordinary care,* to ascertain the presence of the trolley bus." He contends that this omission places on him a fixed standard of care such as is required of a pedestrian rather than the degree of care required of one whose work necessitates his presence in the streets. However, "The instructions must be read as a whole, viz., each instruction should be considered in connection with the others and if, without straining any portion of the language, the instructions harmonize as a whole, and fairly and accurately state the law, a reversal may not be had because of verbal inaccuracies, because isolated sentences and phrases are open to just criticism, or because a separate instruction does not contain all of the conditions and elements which are to be gathered from the instructions as a whole." (*Barlow* v. *Crome,* 44 Cal.App.2d 356 [112 P.2d 303].) (See, also, *Megee* v. *Fasulis,* 65 Cal.App.2d 94, 101 [150 P.2d 281]; *Reuter* v. *Hill,* 136 Cal.App. 67 [28 P.2d 390].) Here reading the instructions as a whole the jury was fully and fairly informed that plaintiff need only exercise ordinary care, and that this care was measured by that "exercised by a man of ordinary prudence under the circumstances."

Furthermore appellant was not in the ordinary position of a person required to work in a public street. He knew that he was working on a truck which was double parked in violation of law close to where the trolley bus must

pass, he had been instructed by his foreman to keep a lookout for passing buses, and he himself testified that he heard the noise of the trolley on the wire made by the approaching bus but did not look up "because sometimes there is a truck or bus going in the opposite direction, in the other direction and that makes a noise too—and I am busy." We cannot hold under the peculiar facts that the instruction complained of was prejudicial.

The court instructed the jury that "It is no concern of yours . . . whether plaintiff's employer or his servants were negligent and their negligence cannot be imputed to him. It then gave the instruction appellant assigns as error. The court read .Vehicle Code section 586 which prohibits double parking and instructed that double parking of the garbage truck was negligence and "If you find from the evidence in this case that the sole proximate cause of the accident was the double parking of the garbage truck in violation of the section of the Vehicle Code I have just read to you, I instruct you that you cannot award any damages to the plaintiff in this case. . . ." The jury retired to deliberate and later returned to the courtroom. The foreman stated, ". . . there is one matter we don't quite understand. You read us the instruction you gave about the parking of the garbage truck, there are two separate instructions there, and we would like to have them both read." The court then read the instruction on double parking and the instruction that any negligence of the employer or other employees could not be imputed to the plaintiff. The foreman then asked for the instructions as to. contributory negligence which were given. The jury then retired and later returned a verdict for defendants.

Appellant contends that the court erred in giving the above instruction as to double parking as it was not applicable to any issue in the case and merely confused the jury. This is, of course, grounded on the idea that the jury imputed the negligence of the truck driver to appellant. It is difficult to see how they could do so as each time the instruction was given the jury was told that the double parking must be the *sole proximate cause* of the accident and any negligence of the driver or employer could not be imputed to appellant. "Even though it be conceded that the instruction complained of was entirely inapplicable, we are unable to discover from the

record that the rights of appellant were in any way prejudiced thereby. Under such circumstances, the giving of the instruction does not constitute such error as to warrant reversal of the judgment. (*Wright* v. *Salzberger & Sons*, 81 Cal.App. 690 [254 P. 671] ; *Lower* v. *Hughes*, 80 Cal.App. 444 [251 P. 952] ; *Marston* v. *Pickwick Stages, Inc.*, 78 Cal.App. 526 [248 P. 930].)'' (*Schatte* v. *Maurice*, 116 Cal.App. 161, 169 [2 P.2d 489].) (See, also, *Callison* v. *Dondero*, 51 Cal.App.2d 403 [124 P.2d 852] ; *Levy* v. *Berner*, 110 Cal.App. 65, 69 [293 P. 896].)

Finally, appellant contends that it was error to refuse to give an instruction he proposed which was to the effect that the mere fact that someone else in appellant's position could have avoided the accident would not be enough to prove that appellant was negligent. A similar instruction was criticized in *Cooper* v. *Southern Pacific Co.*, 43 Cal.App.2d 693, at 701 [111 P.2d 689], but the court there found that the instructions when taken as a whole cured its defects. Here the court adequately covered this subject in the other instructions so the refusal was not error even if the proposed instruction be correct. (*Burke* v. *John E. Marshall, Inc.*, 42 Cal.App.2d 195, 204 [155 P.2d 130] ; *Huber* v. *Henry J. Kaiser Co.*, 71 Cal. App.2d 278, 290 [162 P.2d 693].)

In view of the constitutional inhibition that no judgment shall be set aside or new trial granted in any case on the ground of misdirection of the jury, unless the court after an examination of the entire cause should be of the opinion that the error complained of has resulted in a miscarriage of justice (Cal. Const., art. VI, § 4½), there is no reasonable ground herein upon which the judgment may be reversed. (*Martin* v. *Vierra*, 34 Cal.App.2d 86, 95 [93 P.2d 261].)

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 1, 1947. Gibson, C. J., Carter, J., and Schauer, J., voted for a hearing.